# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CR-10-155-M |
| | ) |
| RICHARD D. MILLER, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is defendant's Motion to Suppress Evidence Obtained as a Result of an Illegal Arrest, Search and Seizure [docket no. 17], filed May 20, 2010. On June 1, 2010, the government filed its response. On June 24, 2010, the Court conducted a hearing on the motion to suppress.[1] Based upon the parties' submissions, and having heard the evidence presented, the Court makes its determination.

I.     Factual Background[2]

On February 1, 2010, at approximately 11:10 p.m., defendant was a passenger in Celsy Young's brown pickup truck traveling southbound on Pennsylvania Avenue near the intersection of Interstate 240 ("I-240") in Oklahoma City, Oklahoma. At the intersection of southbound I-240 and Pennsylvania Avenue, there is a turn lane which allows traffic to turn to the left, heading eastbound onto the access road, also referred to as Southwest 74th Street, which leads to an on ramp to I-240. Both Officer Barnes and Sergeant Bowden, who were traveling northbound on Pennsylvania Avenue in a police unit observed that the northbound traffic had a solid green light

---

[1] At the hearing, Oklahoma City Police Officer Chris Barnes ("Officer Barnes"), Sergeant Ryan Bowden ("Sergeant Bowden") and defendant testified.

[2] This factual background is based upon the evidence presented at the hearing.

illuminated and that a vehicle in front of them, also traveling northbound, had to suddenly slam on its brakes. Officer Barnes and Sergeant Bowden observed Mr. Young, the driver of the pickup, fail to properly yield to oncoming traffic at the intersection.

The officers, as a result of observing this conduct, turned east onto the I-240 access road and followed Mr. Young and defendant in the brown pickup truck as that vehicle proceeded onto the elevated portion of I-240 by going up the on ramp. Officer Barnes, who was driving the patrol unit, activated his emergency lights and began a traffic stop, signaling to the driver to pull over near the Shields exit. After activating the lights, the pickup truck exited the interstate and pulled off of I-240 near the Shields Boulevard exit and stopped just after the Nissan dealership sign.

As the pickup truck was in the process of being pulled over, Officer Barnes activated his "take down" spotlights on the light bar of his patrol unit, which are white lights designed to illuminate the area in front of the patrol unit. Officer Barnes could not recall whether the Nissan dealership was lit or not, but testified he had no trouble seeing in the vehicle after he turned his lights on. Officer Barnes and Sergeant Bowden observed movements of defendant while he was a passenger in the pickup truck. Officer Barnes described defendant moving his arms, and straightening out in his seat and leaning over as though he was standing up in order to reach into his pocket.

After pulling the pickup truck over, Officer Barnes first approached the driver of the vehicle, Mr. Young, and requested his driver's license. Mr. Young responded to Officer Barnes that he did not have a driver's license. Mr. Young was then asked to step out of the pickup truck, placed under arrest, handcuffed and put in the backseat of the patrol car. Sergeant Bowden approached defendant on the passenger side of the pickup truck, and conducted a pat frisk of defendant after he exited the

2

pickup truck. During the frisk, Sergeant Bowden felt a hard foreign object in defendant's waistband area although he did not retrieve the foreign object at that time. Instead, Sergeant Bowden waited on Officer Barnes to come to the passenger side of the pickup truck where Sergeant Bowden and defendant were located. Sergeant Bowden had Officer Barnes hold defendant's hands behind his back while Sergeant Bowden pat frisked further and began to investigate the foreign object in the waistband. Sergeant Bowden noticed what he described as an object that looked like a large sock, sticking out of the front of defendant's waistband. Sergeant Bowden pulled it up out of his pants and it was actually a stocking cap or beanie that contained a .22 caliber semi-automatic Beretta pistol, loaded with 2 rounds of Remington brand .22 short ammunition. After the weapon was recovered, defendant was handcuffed and placed into the patrol unit, initially for carrying a concealed weapon until it was determined that he was a convicted felon. As result of the evidence seized in this encounter, the government has charged defendant with being a felon in possession of a firearm and ammunition.

II.     Discussion

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. One type of search or seizure is a patdown. "To justify a patdown of a driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, ---U.S. ----, 129 S.Ct. 781, 784 (2009). Because the "sole justification" for such a search is the protection of the officer and others, its scope must be confined to a search reasonably designed to discover concealed weapons. *Terry v. Ohio*, 392 U.S. 1, 29 (1968); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) ("So long as the officer is

entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.").

The critical inquiry is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27 (internal citations omitted). The Tenth Circuit recently observed the following:

> As courts have often repeated, the existence of objectively reasonable suspicion of illegal activity does not depend upon any one fact, but on the totality of circumstances. In deciding whether the government has met its burden of showing reasonable suspicion, we judge the officer's conduct in light of common sense and ordinary human experience, and we accord deference to an officer's ability to distinguish between innocent and suspicious actions. Thus, the evaluation is made from the perspective of the reasonable *officer*, not the reasonable *person*.
>
> The deference owed to the officer's judgment, however, is not unlimited. Even though reasonable suspicion may be founded upon factors consistent with innocent travel, some facts must be outrightly dismissed as so innocent or susceptible to varying interpretations as to be innocuous. Moreover, the officer must point to specific, articulable facts.

*United States v. Simpson*, --- F.3d ----, 2010 WL 2559796, at *4-5 (10th Cir. 2010) (internal citations and quotations omitted) (emphasis in original).

In this case, the government asserts that the pickup truck failed to yield as it was heading southbound and Officer Barnes and Sergeant Bowden had a reasonable suspicion that a traffic violation had occurred. The Court agrees as sufficient evidence was presented to conclude that the traffic stop of the pickup truck was justified at inception. However, whether a reasonably prudent

4

man in the circumstances of Officer Barnes and Sergeant Bowden would be warranted in the belief that his safety or that of others was in danger to warrant a search of defendant presents a closer question.

At this stage, the government contends that several factors contribute to Sergeant Bowden's, and presumably also Officer Barnes', concerns for officer safety: (1) this stop occurred at night with several occupants in the car and traffic stops can often be violent confrontations and the risk is even greater at night; (2) both officers observed a violation of Oklahoma law in the unlawful manner in which the vehicle was operated and observed defendant moving around the vehicle as though he was hiding something; (3) Mr. Young, the driver of the pickup truck, did not possess a valid driver's license; (4) Officer Bowden observed a large hunting knife in plain view inside the vehicle within reach of defendant; and (5) Officer Barnes and Sergeant Bowden would not be able to safely conduct a pat down search while defendant remained in the vehicle, particularly with a knife within easy reach of defendant.

Weighing the relevant factors, the Court finds that the time of the stop weighs in favor of reasonable suspicion due to the greater risks law enforcement officers face at night. The next factor, defendant's movements in the passenger compartment of the pickup truck, without "specific, articulable facts" may be consistent with innocent travel and subject to varying interpretations, *e.g.*, defendant testified that he was reaching for his cellular phone. The Court, therefore, does not credit this factor towards reasonable suspicion. Third, the government contends the mere fact that the driver, Mr. Young, lacked a valid driver's license imputes reasonable suspicion to search defendant. While this factor may cast a suspicious light on defendant, the Court views this factor cautiously and finds that it must be examined in the context of the other factors in the reasonable suspicion calculus.

5

The next factor, the large hunting knife allegedly in plain view, is the rub of the case for reasonable suspension. Both Officer Barnes and Sergeant Bowden testified that a "Bowie knife" was observed in plain view when the pickup truck was pulled over. However, neither Officer Barnes nor Sergeant Bowden submitted a police report of the incident referencing the knife, nor did the relevant probable cause affidavit reference the knife. Moreover, the inventory report of items seized from the pickup truck did not reference a knife. The Court also finds the testimony of Officer Barnes and Sergeant Bowden questionable based upon their demeanor on the witness stand. Further, there was no corroboration of their testimony in either the relevant police report, probable cause affidavit or inventory report. The Court finds the evidence does not support a finding that there was a knife at the scene. This factor, therefore, weighs heavily against a finding of reasonable suspicion.

The final factor offered by the government, that Officer Barnes and Sergeant Bowden would not be able to safely conduct a pat down search while defendant remained in the vehicle, particularly with a knife within easy reach of defendant, does not weigh in favor of reasonable suspicion based on the Court's earlier determination that the evidence does not support there was a knife at the scene.

Based upon the totality of circumstances, and in particular the questionable credibility of Officer Barnes and Sergeant Bowden, the Court finds that the factors present here do not constitute reasonable suspicion. Specifically, the factors which weigh in favor of reasonable suspicion are of minimal significance and susceptible to varying interpretations so as to be innocuous. Because "the question is whether this suspicion was reasonable and articulable rather than a hunch that turned out accurate," the Court finds that the officer and sergeant's "inchoate and unparticularized suspicions or hunches were insufficient to give rise to reasonable suspicion" that defendant was armed and

dangerous. *Simpson*, 2010 WL 2559796, at *11. Therefore, the Court concludes the officer's and sergeant's actions were outside the bounds of the Fourth Amendment such that the evidence obtained should be suppressed.

III. Conclusion

Accordingly, the Court GRANTS defendant's motion to suppress and SUPPRESSES the evidence obtained from the instant search.

**IT IS SO ORDERED this 9th day of July, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE